STATE of Missouri, Respondent,

v.

Vance E. TIVIS, Appellant.

Nos. WD 50470, WD 51631.

Missouri Court of Appeals,
Western District.

Submitted June 19, 1996.

Decided Sept. 10, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 29, 1996.

Application to Transfer Denied
Dec. 17, 1996.

Susan L. Hogan, Dist. Defender, John E. Cash, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Becky Owenson Kilpatrick, Asst. Attys. Gen., Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

Vance E. Tivis appeals from his conviction for stealing over $150.00, § 570.030, RSMo 1994 [1], and for burglary in the second degree, § 569.170, for which he was sentenced to two concurrent terms of fifteen years imprisonment. Tivis also appeals from the denial of his Rule 29.15 motion for post-conviction relief. In his direct appeal, Tivis contends that the trial court erred by not *sua sponte* declaring a mistrial when a police detective testified that he had obtained Tivis' photograph, used in a photographic lineup, from a

---

**1.** All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

"mug file" and where the lineup, viewed by the jury, showed the words "Police Department" in Tivis' photograph and other photographs. Tivis asserts that such evidence constituted prejudicial evidence suggesting that he had a history of prior criminal activity. In his appeal from the denial of his Rule 29.15 motion for post-conviction relief, Tivis contends that the motion court erred in denying his motion without an evidentiary hearing in that trial counsel was ineffective in failing to object to testimony about the photograph obtained from a "mug file," and in failing to object to the showing of the photographic lineup to the jury. He also contends he was sentenced improperly.

The judgment of the trial court is affirmed. The denial of Tivis' Rule 29.15 motion for post-conviction relief is affirmed.

On September 1, 1993, James Ralph, who lived in Grandview, Missouri with his sister, Debra Ralph, noticed a strange car in the driveway when he returned home. Knowing that his sister was not home, he wrote down a description of the vehicle, including its license plate number. Mr. Ralph then drove down the street, about 200 feet away, and watched the house. About 20 or 30 seconds later, Mr. Ralph saw a man walk out of the front door of the house carrying a VCR and a microwave which belonged to Mr. Ralph's sister. The man put the VCR and the microwave into the trunk of the Cadillac. Mr. Ralph drove back to the house and blocked the driveway. He started yelling at the man, informing him that he had called police. The man approached, which frightened Mr. Ralph, causing him to leave. Mr. Ralph went to a building down the street and asked someone to call the police.

Shortly thereafter, Officer Wagner of the Grandview Police Department arrived at the house and found that the house had been broken into. The microwave oven and VCR were missing. Mr. Ralph gave Officer Wagner a description of the man he had seen and a description of the car, including its license plate number. A check on the license plate revealed that the appellant, Vance Tivis, was a known driver of the car with that license plate number.

Three weeks later, on September 22, 1993, Officer Jeff Morland asked Mr. Ralph to come to the police station. He told Ralph that he had developed a suspect and wanted Mr. Ralph to view a photographic lineup. Officer Morland had obtained a photograph of Tivis. He then went to the department's MOID system where pictures are classified and filed based upon height, weight, sex, race, and other characteristics. Officer Morland selected five photographs of men from the same classification as Tivis. Mr. Ralph positively identified photograph number four, the photograph of Tivis, as the man that he saw leaving his sister's house. The photographs of Tivis and two of the other men have the words, "Police Department" visible below the face of each man.

At the subsequent trial, the photographs were received in evidence at trial along with testimony as to the facts mentioned above. Tivis did not present any evidence. A jury found him guilty as charged. The trial court found Tivis to be a prior and persistent offender and sentenced him to two concurrent terms of fifteen years imprisonment. Tivis filed a *pro se* Rule 29.15 motion for post-conviction relief on March 25, 1995. An amended motion was filed on April 5, 1995, which was denied without an evidentiary hearing. Tivis appeals from his conviction and from the denial of his Rule 29.15 motion.

### Reference to "Mug File"

 In Point I, Tivis argues that the trial court erred by not *sua sponte* declaring a mistrial when Officer Morland testified that he had obtained Tivis' photograph, used in a photographic lineup, from a "mug file." Tivis asserts that such evidence constituted prejudicial evidence of other crimes because it indicated that he had a history of prior criminal activity. This contention has not been preserved for appeal. Tivis did not object to the reference to the term "mug file," nor request a mistrial. Since Tivis now claims error in not declaring a mistrial, review is for plain error pursuant to Rule 30.20. *State v. Parker*, 886 S.W.2d 908, 922 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). In *State v. Varvera*, 897 S.W.2d 198, 201 (Mo.App.

1995), the Southern District recently explained the mechanics of plain error review:

Plain error and prejudicial error are not synonymous terms. State v. Valentine, 646 S.W.2d 729, 731[4] (Mo.1983). Relief under the plain error standard is granted only when an alleged error so substantially affects a defendant's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. State v. Hadley, 815 S.W.2d 422, 423[1] (Mo. banc 1991). Appellate courts use the plain error rule sparingly and limit its application to those cases where there is a strong, clear demonstration of manifest injustice or miscarriage of justice. State v. Collis, 849 S.W.2d 660, 663[1] (Mo. App.1993). The determination of whether plain error exists must be based on a consideration of the facts and circumstances of each case. State v. Cline, 808 S.W.2d 822, 824[5] (Mo. banc 1991). A defendant bears the burden of demonstrating manifest injustice or miscarriage of justice. State v. Harrison, 864 S.W.2d 387, 389[3] (Mo.App.1993).

The officer's use of the term "mug file" was unnecessary. Testimony concerning the use of mug shots which discloses information that a defendant has committed other crimes is improper. State v. McCauley, 831 S.W.2d 741, 742 (Mo.App.1992). However, the mere fact that a police department previously had on file a photograph of a defendant does not lead to the inference that the defendant has committed prior crimes. State v. Harris, 534 S.W.2d 516, 520 (Mo. App.1976). In Harris, the court examined cases from other jurisdictions on the issue, examining the context in which the term "mug shots" was used. Id. at 520–21. The court drew a distinction between the term as used in the context of identification and the use of the term relating to past criminal activities. Id. The court in Harris was not ready to accept, without proof, the notion that jurors are likely to believe that "persons whose photographs are on file with the police department have committed other crimes." Id. at 519–20. See also State v. Depriest, 822 S.W.2d 488, 491–92 (Mo.App.1991) (fact that police photograph of defendant may have looked like a "mug shot" is not evidence of other crimes). Similarly, while we believe the term "mug shot" or "mug file" may carry some unfortunate connotations for some jurors, we are not ready to conclude that the single use of the term "mug file" in this case was so prejudicial as to require the trial court to declare a mistrial sua sponte.

This case is not like State v. Blaney, 801 S.W.2d 447, 450 (Mo.App.1990), where the mug shot of defendant, which was passed to the jury along with other photographs, had been initialed on the back, not only by the victim in that case, but also by another person, whose initials (W.S.S.) were different from those of the victim in that case. The jury understood that the initials were placed on the back of the photograph to indicate that the person signing his initials had identified the photograph of the defendant. The fact that the initials W.S.S. did not correlate to any person in that case strongly suggested that defendant had also been identified by someone in connection with another crime. Id. There, the court concluded that the inference of other crimes was so strong it was necessary to give the defendant a new trial. Id. at 451. Here, however, the fact that the officer said he obtained defendant's photograph from a "mug file" is not in itself so prejudicial as to require a mistrial. Harris, 534 S.W.2d at 521. Whether a mistrial should be allowed is within the discretion of the trial court. State v. Ross, 680 S.W.2d 213, 218 (Mo.App.1984). We cannot say that the trial court abused its discretion in the instant case in failing to declare a mistrial sua sponte.

### "Police Department" on Photographs

Tivis also objects to the fact that the photographic lineup, which was viewed by the jury, included the words "Police Department" on Tivis' photograph and the photograph of others. Tivis contends that the use of the words on the photographs, especially taken together with the use of the term "mug file," constituted prejudicial evidence of other crimes because of the inference of prior criminal history. Again, this contention has not been preserved for appeal. Although Tivis did object to the identification testimony of Mr. Ralph on the grounds that the photo

array was unduly suggestive, Tivis did not at trial object to the showing of the photograph to the jury, nor request a mistrial. Thus, again our review is only for plain error.

Tivis contends that the testimony of Officer Morland and the photograph with the words "Police Department" constituted evidence of other crimes. Tivis contends such evidence violates the rule that a defendant has the right to be tried only upon the crimes charged against him. *State v. Wright*, 582 S.W.2d 275, 277 (Mo. banc 1979). Tivis contends that this evidence made it clear to the jury that he had been arrested for offenses occurring prior to the burglary at Debra Ralph's house. We disagree.

 The introduction of a mug shot in evidence is examined in light of the facts and circumstances of the case. *State v. Vanzant*, 814 S.W.2d 705, 707 (Mo.App.1991). Police photographs, including "mug" shots, are considered neutral and do not, in and of themselves, constitute evidence of other crimes where inculpatory information is masked. *McCauley*, 831 S.W.2d at 742. Mug shots are readily admissible into evidence where all identifying information is masked, where a defendant's identity is in issue and where admission of the mug shots will help a jury to determine the accuracy of the identification. *Blaney*, 801 S.W.2d at 450. The admission of a mug shot constitutes prejudicial evidence of other crimes only when the mug shots or accompanying testimony discloses a defendant's prior arrests or convictions. *Id.*

Here, as already discussed, there was no testimony disclosing any prior arrest or conviction of the defendant. The use of the words "Police Department" on the photograph was not in and of itself significant, in the context of this case. The jury could reasonably anticipate that a police department photograph may bear the words "Police Department." The fact that the picture used by the police in the photo array stated "Police Department" on several of the photographs was, in this case, harmless, because it did not suggest Tivis was guilty of other crimes. In this case the jury knew that the car and license plate described by Mr. Ralph

were traced to Tivis. The jury knew that the officer obtained a picture of Tivis, which he combined with pictures of men of a similar general description, so that he could see if Mr. Ralph could identify Tivis. Consequently, there was nothing about the words "Police Department" on the photograph which was significant. The trial court did not err in failing to declare a mistrial due to the appearance of the words "Police Department" on the photographs. *State v. Neal*, 849 S.W.2d 250 (Mo.App.1993) (holding counsel not ineffective for failing to move to suppress a photo array where defendant's photo was labeled "Police Department").

### Sentencing

Tivis also challenges his status as a prior and persistent offender. The judgment of the trial court stated:

> The Court having heretofore found beyond a reasonable doubt that the defendant is a prior offender and persistent offender pursuant to the provisions of Sections 558.016, and 557.036.4, RSMo; and that Defendant is subject to extended punishment pursuant to 558.019 RSMo.
>
> **IT IS ADJUDGED** that defendant is a prior offender pursuant to the provisions of Sections 558.016, and 557.036.4, RSMo and that Defendant is subject to extended punishment pursuant to 558.019, RSMo.

 Tivis contends that the trial court committed plain error and exceeded its jurisdiction when it adjudicated him to be "subject to extended punishment pursuant to 558.019, RSMo," because he was not subject to the provisions of that statute. Tivis reasons that since the amendment of the definition of the term "dangerous felony" in § 556.061(8) no longer included any degree of burglary, he was entitled to be sentenced in accordance with the new definition because the amendment was effective before the date of his original sentencing. This would have the effect of reducing the minimum time that he would have to serve. Tivis did not present this argument to the trial court nor did he claim that counsel was ineffective in not presenting this argument.[2]

2. Tivis, in his *pro se* Rule 29.15 motion, did claim

that counsel was ineffective in failing to chal-

Tivis is thus foreclosed from raising the issue for the first time in this appeal.[3] Point denied.

### Post–Conviction Proceedings

Tivis contends that the motion court erred in its denial of his 29.15 motion without granting an evidentiary hearing because trial counsel was ineffective for failing to object to evidence that Detective Morland obtained the photograph of Movant from a "mug file" at the Grandview Police Department, and failed to object to admission of the photographic lineup, which included three photographs with the words "Police Department" underneath the pictures.

Our review, performed pursuant to Rule 29.15(j), is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Leisure v. State*, 828 S.W.2d 872, 873–74 (Mo. banc), *cert. denied*, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). The findings and conclusions are regarded as erroneous only if an appellate court is left with the firm impression that a mistake had been made after review upon the entire record. *State v. Nolan*, 872 S.W.2d 99, 104 (Mo. banc 1994). In order to prevail upon a claim of ineffective assistance of counsel, movant must prove that (1) trial counsel was deficient in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and (2) that movant was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "In order to be entitled to an evidentiary hearing, a movant must 1) cite facts, not conclusions, which, if true, would entitle movant to relief; 2) the factual allegations must not be refuted by the record; and 3) the matters complained of must prejudice the movant." *State v. Blankenship*, 830 S.W.2d 1, 16 (Mo. banc 1992). The motion court denied Tivis' motion without an evidentiary hearing. The court found that Tivis' allegation of counsel's ineffectiveness was refuted by the record. The motion court found that trial counsel had filed motions and made objections at appropriate times. Trial counsel had filed a motion to suppress the identification of Tivis by Mr. Ralph, and a suppression hearing was held. Trial counsel also objected during the State's direct examination of Officer Morland. Counsel also objected that the photo array was suggestive, that the process used was suggestive, and that the identification was improper. In *State v. Neal*, 849 S.W.2d 250 (Mo.App.1993), this court held that counsel was not ineffective in failing to move to suppress a photo array where the defendant's photo was labeled "Police Department." Similarly, in this case counsel was not ineffective in allowing the jury to view a photo array bearing the words "Police Department." Moreover, a review of the record demonstrates that

lenge or make a record as to the trial court's error in finding him to be a class X, prior and persistent offender. He did not raise the issue he is now attempting to raise on appeal, however.

3. Even were we to treat the point has having been properly raised, we would find Tivis' argument to be without merit. Tivis relies on § 1.160, which states, in pertinent part:

No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except:

 . . . .

(2) That if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense prior to original

sentencing, the penalty or punishment shall be assessed according to the amendatory law.

The alteration in the definition of "dangerous felony" was not an "alteration of the law creating the offense" of second degree burglary. Therefore, § 1.160 is not applicable under the facts in the instant case. Tivis is not entitled to the use of the amended definition of "dangerous felony" which occurred after he committed the underlying offense for the purpose of determining whether or not he is subject to sentencing enhancement. *See State v. Dean*, 898 S.W.2d 704, 707 (Mo.App.1995)

Tivis was vigorously and competently defended overall.

In *Jones v. State*, 784 S.W.2d 789, 793 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990), the court stated:

> We will not permit counsel to convert unpreserved error into viable error by arguing incompetence.... The fact that a meritorious objection is not made does not demonstrate incompetence. There must be a showing that counsel's overall performance fell short of established norms and that this incompetence probably affected the result.

It is not enough to show that counsel was inartful in certain particulars. The burden is on the defendant-movant to show that the overall performance of counsel fell short of acceptable norms, and that the outcome of the case was probably affected as a direct result of the overall incompetence of counsel. Although counsel did not object to the use of the term "mug file" (which could have been a valid strategic decision) or ask for a mistrial (which, most likely, would not have been granted) and although counsel did not object to the jury viewing the police photographs with the words "Police Department" on the photographs (which was not in our view ineffective) and although counsel did not argue that Tivis could not be sentenced as a class X, prior and persistent offender, the record in this case shows conclusively that counsel's overall performance was not ineffective.

### Conclusion

The judgment of the trial court is affirmed. The judgment of the motion court is affirmed.

All concur.