**STATE of Missouri, Plaintiff–Respondent,**

v.

**John Ivan DAVIS, Defendant–Appellant.**

No. 28139.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 8, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 27, 2007.

Application for Transfer Denied Jan. 22, 2008.

Emmett D. Queener, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joshua N. Corman, Jefferson City, for Respondent.

JOHN E. PARRISH, Presiding Judge.

John Ivan Davis (defendant) was convicted, following a jury trial, of statutory rape in the first degree. § 566.032, RSMo 2000. This court affirms.

On October 18, 2002, P.S. was 13 years old. She attended a birthday party for Cassandra Sportsman at Cassandra's resi-

dence. Four girls in addition to P.S. and Cassandra were at the party. Cassandra has three older step-brothers, Cody, Robert and Kenneth, who were at the Sportsman residence at the time of the party. Defendant was there also. Defendant was 24 years old.

Defendant and Robert left the Sportsman residence to purchase alcohol after Cassandra's parents had gone to bed. After they returned, defendant, Cody, Robert, Kenneth, P.S., and one other girl consumed alcohol. This occurred in Kenneth's bedroom on the second floor of the Sportsman residence. The residence consisted of two floors and a basement.

At some point that evening, P.S. and defendant returned to Kenneth's bedroom. P.S. told the trial court and jury that the two of them talked and then "made out." They were on a bed. While there, one of the other girls opened the bedroom door and saw P.S. and defendant on the bed. After the girl left and closed the door, defendant locked the bedroom door. P.S. and defendant continued to make out. At some point they left the bedroom and went to the basement. They talked about having intercourse. P.S. had told defendant she was 13.

Defendant and P.S. "moved on to the floor and had sex." P.S. explained that they thought they heard someone coming downstairs; that they "hurried up and got [their] pants on and, like, went upstairs."

Farrell Lee Jeter is an officer with the Branson, Missouri Police Department. He had previously been a detective with the Hollister, Missouri Police Department. While with the Hollister department, Officer Jeter participated in the investigation that led to the charges that are the subject of this appeal.

Officer Jeter testified that the investigation was initiated by a detective from the Taney County Sheriff's Department. Officer Jeter was asked to assist with the investigation. He was trying to determine the identity of a person only known to the officers as John. Officer Jeter was asked the following questions and gave the following answers.

Q. And did you have information that helped you discover the identity of [defendant] by way of his birth—date of birth or a Social Security number?

A. Yes.

Q. And that information was gleaned from—from what source?

A. Radio logs at the Hollister Police Department.

Officer Jeter said he discovered defendant's birth date and social security number during the course of his investigation. His questioning continued.

Q. Okay. And based—and based upon that did you endeavor to find a photograph of [defendant]?

A. Yes, I did.

Q. During the course of your investigation how many photographs of [defendant] did you accumulate?

A. I found two.

Q. Okay. I'm going to show you first what has been marked as State's Exhibit No. 11. Can you identify what that is?

A. That's a booking photo from a Stone County jail in—

At that point, defendant's attorney interposed the objection, "Objection, relevance." A discussion ensued, after which defense counsel requested a mistrial. The prosecutor countered with the request that the jury be instructed "to disregard that last comment as being irrelevant and not responsive." The trial judge denied the request for mistrial. The jury was instructed "to disregard the response that the witness gave to the last question."

When trial resumed Officer Jeter was shown State's Exhibit No. 11 and asked if he could identify it. He answered, "It's [defendant]." Officer Jeter stated that the picture "was taken in 7 of '99." He was then shown another photograph identified as State's Exhibit No. 12 and asked if he could identify it. He answered that it was a photograph of defendant; that it was taken in October 2004. Following inquiry as to whether the photographs fairly and accurately depicted the way defendant appeared on the dates the pictures were taken, State's Exhibit Nos. 11 and 12 were offered in evidence. The trial judge asked if there was an objection. Defense counsel answered, "No, Your Honor." The exhibits were admitted in evidence.

■ Defendant's sole point on appeal is directed to the denial of his request for mistrial. Defendant contends the trial court erred in not granting a mistrial "when Det. Jeter identified State's Exhibit 11 as a 'booking photo' of [defendant]."

In *State v. Rodgers*, 3 S.W.3d 818 (Mo. App.1999), a question not unlike that posed to Officer Jeter was asked an investigating officer. The officer in *Rodgers* was asked if, as a result of having Rodger's name, he had been able to obtain a recent photograph of Rodgers to use to further his investigation. The officer replied, "Yes. I'm sorry we did not have a current mug shot on file." The officer's attempt to explain what was available was interrupted with an objection asserting that the reference to a "mug shot" was evidence of other crimes. The trial court overruled the objection. On appeal, Rodgers contended this was error. The Western District of this court, in commendable detail, explained the dangers of such references.

Evidence of other crimes can have a "dangerous and misleading probative force" and, therefore, "its admission should be subjected by the courts to rigid scrutiny." *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). Enough has been written about the term "mug shot" to demonstrate that it should not be employed in a criminal trial. See *State v. Newman*, 605 S.W.2d 781, 788 (Mo.1980) (citing *State v. Rutledge*, 524 S.W.2d 449, 458 (Mo.App. 1975); *State v. Harris*, 534 S.W.2d 516, 518–521 (Mo.App.1976); and *State v. Lorenze*, 592 S.W.2d 523, 529 (Mo.App. 1979)). There is a disturbing number of cases where witnesses made improper references to "mug shots" or photos in the police files. We have repeatedly expressed our disapproval of the use of the term "mug shots." See *State v. Burns*, 581 S.W.2d 590, 593 (Mo.App. 1979); *State v. Rutledge*, 524 S.W.2d at 458. Nonetheless, we have been reluctant to conclude that this error necessarily connotes the commission of other crimes. *Burns*, 581 S.W.2d at 593. Our courts have stated that we are not ready to accept, without proof, the notion that jurors are likely to believe that "persons whose photographs are on file with the police department have committed other crimes." *Harris*, 534 S.W.2d at 520. However, we cannot ignore the obvious that the terms "mug shot" and "mug file" carry unfortunate connotations for some jurors. Thus, the use of a mug shot as evidence must be examined in the light of the facts and circumstances of each case. *State v. Vanzant*, 814 S.W.2d 705, 707 (Mo.App.1991) (citing *State v. Morrison*, 545 S.W.2d 376, 378 (Mo.App.1976)). *See also State v. Tivis*, 933 S.W.2d 843, 846 (Mo.App.1996).

*Id.* at 822.

*Rodgers* explained that knowledge that a defendant was identified in connection with another crime could readily tip the scales against him or her in a closely contested case; that testimony of a witness regard-

ing a photograph or "mug shot" in police files presented a potential for prejudice adverse to that defendant. The court concluded, nevertheless, that "the mere fact that a police department previously had on file a photograph of a defendant does not lead to the inference that the defendant has committed prior crimes." *Id.* at 823. *See also State v. Tivis,* 933 S.W.2d 843, 846 (Mo.App.1996).

*Rodgers* held that the trial court overruling the objection to the reference to "mug shot" was error, but that the erroneous ruling did not prejudice Rodgers. The court observed that the statement was an isolated statement and did not connect Rodgers to a specific crime. *Rodgers* admonished, however, "that it is prudent for counsel to exercise greater caution in preparation of the state's witnesses, and when questioning police witnesses, about photo line-ups." *Id.*

 In this case, the photograph at issue was not referred to as a "mug shot" but as "a booking photo." Albeit that "mug shot" may have a more onerous connotation than "booking photo," the same danger exists that a jury might equate the booking photo reference to a previous criminal conviction. Here, however, as in *Rodgers,* the reference was fleeting and did not connect defendant to a specific crime. Mindful that "[m]istrial is a drastic remedy, ... [t]he decision whether to grant a mistrial is left primarily to the trial court, which is in the best position to determine whether the complained-of incident had any prejudicial effect on the jury." *State v. Smith,* 32 S.W.3d 532, 552

(Mo.banc 2000). A trial court's denial of a request for a mistrial will be overturned only if the trial court abused its discretion. *State v. Hill,* 929 S.W.2d 258, 263 (Mo.App. 1996). Mistrial should be granted only in extraordinary circumstances. *Id.* This court finds no abuse of discretion. Officer Jeter's statement that the photograph of defendant was a "booking photo" did not require a mistrial.[1] Defendant's point is denied. The judgment is affirmed.

BATES and SCOTT, JJ., concur.

---

1. The photograph in question, State's Exhibit No. 11 was not deposited with this court pursuant to Rule 81.16. When offered in evidence, defense counsel announced "no objection" to its being admitted. When an exhibit is not filed with an appellate court, its intendment and content will be taken as favorable to the trial court's ruling and as unfavorable to the appellant. *Gage v. Morse,* 933 S.W.2d 410, 424 (Mo.App.1996). There was no showing that, as in *State v. Blaney,* 801 S.W.2d 447, 450–51 (Mo.App.1990), the photograph itself disclosed that defendant had been identified by someone in connection with a different crime than that for which he was on trial.