**John Thomas PRAPOTNIK, Jr., Respondent,**

v.

**Jennifer CROWE, Records Officer, Appellant.**

**No. WD 59640.**

Missouri Court of Appeals, Western District.

Submitted Sept. 11, 2001.

Decided Oct. 2, 2001.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Emily Wiggins Little, Asst. Atty. Gen., Jefferson City, for appellant.

George Allen Pickett, Plattsburg, for respondent.

Before THOMAS H. NEWTON, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Jennifer Crowe, Records Officer at Western Missouri Correctional Center, appeals a judgment granting John Prapotnik's declaratory judgment request for jail time credit. Reversed.

### Factual Background

On November 21, 1993, John Prapotnik was arrested, charged and incarcerated on the class B felony of assault on a law enforcement officer in the second degree. At the time of his arrest, Prapotnik was on felony probation. In March of 1994, Prapotnik's probation was revoked as a result of the probation violation which arose out of his arrest and resulting charges of November 21, 1993. Following the revocation of his probation, Prapotnik was committed to the Department of Corrections. On September 5, 1995, Prapotnik pleaded guilty to the November 21, 1993, offense. Prapotnik was sentenced to a term of fourteen years' imprisonment.

At the time of Prapotnik's incarceration on this conviction, on October 24, 1995, the Department of Corrections records showed

that he was being credited for time served from the date of his arrest to sentencing (from November 21, 1993, to October 24, 1995). Thereafter, on June 2, 1999, the Department of Corrections revised its records with regard to Prapotnik, denying him credit from March of 1994 to October 24, 1995, which resulted in his losing 519 days of jail time credit. After having exhausted all administrative remedies with the Department of Corrections, on August 8, 2000, Prapotnik filed his petition for declaratory judgment on the matter in the Circuit Court of DeKalb County. The judge entered his order granting the request for declaratory judgment on January 23, 2001, stating:

> [A]fter being fully advised of the premises and having duly considered the evidence adduced, the Court finds all issues in favor of the Plaintiff ... and does hereby order the Defendant herein to amend its records to reflect that the Plaintiff, John Thomas Prapotnik, Jr., is entitled to credit for time served on the sentence rendered ... on September 5th, 1995 ... beginning November 21st, 1993, as provided by law.

The records officer now appeals that order.

### Point I

Crowe argues, in her sole point on appeal, that the trial court erred in granting Prapotnik's declaratory judgment petition because the 1995 amendment to § 558.031, which would grant him jail time credit pursuant to *Goings v. Missouri Dept. of Corrections,* 6 S.W.3d 906 (Mo. banc 1999), is not applicable to his case in that the offense for which he was convicted was committed in 1993, and the 1995 amendment is not made applicable to his case because the situation does not fall under either of the two exceptions to § 1.160, the statute that precludes retroactive application of statutory amendments.

### Standard of Review

■ When reviewing a declaratory judgment, an appellate court's standard of review is the same as in any other court-tried case. *Guyer v. City of Kirkwood,* 38 S.W.3d 412, 413 (Mo. banc 2001). Thus, the trial court's decision should be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.; Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### Section 558.031

The appellant argues that because the offense was committed in November of 1993, the 1993 version of § 558.031 must apply, even though Prapotnik was not convicted and sentenced until September of 1995. Prapotnik contends that the 1995 revision should apply, which would grant him credit for time served from November 1993 until September 1995, even though he was in jail on a probation violation. The 1995 amendment to § 558.031, if applied, would make this case fall squarely under *Goings,* in that the jail time served, even though due to a probation violation, was "related to" the offense with which he was being held pending trial, because the probation violation was the result of the arrest on that new charge. *Goings* states that since the violation was the result of the arrest on the charge on which he was being held pending trial, it is "related to" the offense. *Goings,* 6 S.W.3d at 908. The 1995 version of § 558.031 says "related to"; the 1993 version does not.

The 1995 version of the statute, states in pertinent part:

> A sentence of imprisonment shall commence when a person convicted of a crime in this state is received into the custody of the department of corrections

or other place of confinement where the offender is sentenced. Such person shall receive credit toward the service of a sentence of imprisonment for all time in prison, jail or custody after the offense occurred and before the commencement of the sentence, *when the time in custody was related to that offense. . . .*

§ 558.031, RSMo 1995 (emphasis added).

Prapotnik concedes that under the prior version of the statute, he would not be entitled to the jail time credit in question.

Prapotnik responds that the trial court correctly granted his petition for declaratory judgment because, pursuant to the 1995 amendment to § 558.031, he is entitled to jail time credit in that the amended statute is made applicable to his case by § 1.160 since its application would reduce the punishment for the crime.

In *Goings,* 6 S.W.3d at 906, the Missouri Supreme Court examined the language of § 558.031 in great detail. That case was factually similar to the case at hand in that Goings was out on parole at the time of the second offense and was returned to custody because his indictment on the new offense created a parole violation. *Id.* at 907. The dispositive issue according to the Court was "whether Goings was 'in custody related to' the offense for which he was sentenced in December 1997 and, therefore, should be credited with time served in the department of corrections prior to that sentencing." *Id.* The Court reversed the trial court's ruling that had denied him credit for time served between the time he was arrested and when he was sentenced, stating: "We believe that the statute, section 558.031, requires such a credit." *Id.*

The relevant portion of *Goings* states:

[T]he state argues that the statute should not be applied to Goings because, as a parole violator, he was not entitled to be free on bond pending his sentencing on the [new] charge. *But this statute is not so limited. The statute requires only that the time in custody be "related to" the offense.* In construing the statute, we are guided by the principle that criminal statutes must be "construed strictly against the [s]tate and liberally in favor of the defendant." . . . In the present case, the time Goings spent in custody prior to receiving his [new] sentence was "related to" that sentence.

*Id.,* at 908 (emphasis added) (internal citations omitted).

## Section 1.160

The issues of the version of § 558.031 that applies is governed by § 1.160 RSMo 1994. Section 1.160 states:

No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, *except:*

(1) That all such proceedings shall be conducted *according to existing procedural laws;* and

(2) That if the penalty or punishment for any offense is reduced or lessened by any alteration of the *law creating the offense* prior to original sentencing, the penalty or punishment shall be assessed according to the amendatory law. (Emphasis added.)

In interpreting statutes, the "polestar" is the intent of the legislature. *Garland v. Dir. of Revenue,* 961 S.W.2d 824, 830 (Mo. banc 1998). We seek an interpretation from the plain and ordinary

language of the act. *See State v. Knapp,* 843 S.W.2d 345, 347 (Mo. banc 1992). We also keep in mind, as the Supreme Court stated in *Goings,* that criminal statutes are to be construed strictly against the state and liberally in favor of the defendant. *Goings,* 6 S.W.3d at 908.

The plain language of § 1.160 indicates that its purpose was to fix the penalties under the criminal statutes as of the date the offense was committed, so that as a general rule, even if a statute dealing with sentencing, imprisonment, or probation is subsequently amended, the offender does not receive the benefit of the amendment. It appears that § 1.160 is designed to have sort of an *"ex post facto"* effect in behalf of the state, protecting the state against claims that the offender is entitled to the benefit of any changes in the law after the date of the offense. Accordingly, if the range of sentence for class B felonies is reduced by the legislature in § 558.011 after the date an individual commits a first degree burglary under § 569.160, the offender is still subject to the higher range of punishment. This rule does not violate the *ex post facto* clause, which simply protects against imposing on an offender subsequent legislative actions to enhance the punishment. *See Ferdinand v. Dormire,* 212 F.3d 473, 477 (8th Cir.2000).

Crowe says that, contrary to Prapotnik's assertions, neither of the exceptions to § 1.160 applies in order to make the 1995 amendment to § 558.031 retroactively applicable to Prapotnik's case. First, § 558.031 is not a *procedural law,* and, second, the appellant says the amended law in the case at hand was not *"the law creating the offense."* Section § 565.082 is

the law creating the offense here, not § 558.031, Crowe points out.

## Because § 558.031 is not a "procedural law," the first exception to § 1.160 does not apply.

■ That exception to § 1.160 RSMo reads, in pertinent part:

No offense committed and no fine, penalty or forfeiture incurred ... shall be affected by the repeal or amendment ... *except:*

(1) That all such proceedings shall be conducted *according to existing procedural laws;* ....

■ The exception provides that, notwithstanding the terms of § 1.160, the "proceedings shall be conducted according to existing procedural laws." This appears to be simply a common sense exception providing that, if the legislature has adopted a new procedural rule, the court does not have to revert to the rules in effect prior to the date of the offense. For instance, if the General Assembly adopted a law allowing an accused five peremptory strikes in jury selection, while keeping the state limited to three such strikes, the accused would have the benefit of the new procedural rule even though it was not in effect on the date of the offense.[1]

"Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights; the distinction between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit."

---

1. Prior to the 1993 amendment of § 1.160, the phrase now reading "existing procedural laws" simply said "existing laws." *See V.A.M.S. Historical* Note to § 1.160. The revision may have been an attempt to legislatively reverse some decisions applying § 1.160(1) to substantive laws. *See. e.g., State v. Whiteaker,* 499 S.W.2d 412 (Mo.1973).

*Wilkes v. MO Highway and Transp. Comm'n,* 762 S.W.2d 27, 28 (Mo. banc 1988).

We believe § 558.031 is not part of the "proceedings" conducted. Rather, § 558.031 governs the calculation of jail time credit in connection with the sentencing.

In *Roy v. Missouri Dep't of Corr.,* 23 S.W.3d 738, 741 n. 1 [2] (Mo.App.2000), the court stated that the 1995 amendment to § 558.031 could not be applied via § 1.160 for the very reason that it was not a "procedural law" and therefore did not fall within the exception:

> ... Mr. Roy's offenses were committed while the 1994 version [of § 558.031] was in effect, but the case was pending at the time of the 1995 amendment. Neither of the exceptions contained in § 1.160 to the general rule that the version of the statute in effect at the time of the commission of the offenses, applies, however. Because a statute providing for pre-trial jail time credit *has an effect on the punishment of the offense* "by reducing the amount of time to be served after conviction by that amount of time spent in jail awaiting trial on the charge," *§ 558.031 is not a procedural law* under § 1.160(1).

Crowe is correct that the amendment to § 558.031 was substantive in nature rather than procedural. We conclude, therefore, that this case does not fall within the first exception to the rule of § 1.160, which generally, with only the specified exceptions, prohibits retroactive adjustments in favor of the offender.

Because § 558.031 is not *"the law creating the offense,"* the second exception to § 1.160 also does not apply.

■ Having found the first exception does not apply, we must examine the second exception.

The second exception to § 1.160 states in pertinent part:

> No offense committed and no fine, penalty or forfeiture incurred ... shall be affected by the repeal or amendment ... *except:*
>
>          \* \* \*
>
> (2) That if the penalty or punishment for any offense is reduced or lessened by any alteration of the *law creating the offense* prior to original sentencing, the penalty or punishment shall be assessed according to the amendatory law.

Looking at the plain terms of this provision, we discern it to indicate that the General Assembly chose to create an exception for the case where, after the offense was committed, but before sentencing, the law which created the offense was amended to provide for a lesser punishment. For instance, if a crime is reclassified from a class A felony to a Class B felony within the statute creating the offense, the offender would receive the benefit of the lower classification. On the other hand, if the range of punishment for class A felonies is amended by a general statute after the date of the offense, the offender would not receive the benefit, but instead would be sentenced under the range that was in effect at the time the offense was committed. *See State v. Tivis,* 933 S.W.2d 843, 848 n. 3 (Mo.App.1996). We do not

**2.** The Eastern District of this court, in *State ex rel. Nixon v. Kelly,* —— S.W.3D ——, 2000 WL 1725315, # 3 (Mo.App.2000), recently decided that *Roy* was not authoritative on the procedural-substantive issue because the time in custody in *Roy* was in fact unrelated to the offense for which he was awaiting trial. *Kelly* transferred to the Missouri Supreme Court on February 13, 2001 (SC 83319).

observe anything about § 1.160 that is ambiguous or unclear, at least in the context before us. Therefore, we do not see the need to construe the statute against the state and in favor of the defendant. We believe the meaning is straightforward.

This reasoning appears to conflict with *State v. Whiteaker*, 499 S.W.2d 412, 420 (Mo.1973). *Whiteaker* held that, pursuant to § 1.160, a defendant convicted and sentenced after an amendment to the "jail time credit" statute should receive the benefit of the favorable amendment. *Whiteaker* dealt with an amendment to § 546.615 (which had formerly allowed trial judge discretion with regard to jail time credit, and the amendment made it mandatory that such credit be given.) The court held that the amended statute had the effect of "lessening the punishment by reducing the amount of time to be served after conviction by that amount of time spent in jail awaiting trial on the charge." *Id.* at 421. The court decided, therefore, that the "jail time credit" statute was applicable as an exception to the general rule of § 1.160.

Crowe contends *Whiteaker* was wrong because the "jail time credit" statute there was not "the law creating the offense." Crowe notes the two subsequent cases have, in contrast to *Whiteaker*, taken a more direct, plain language approach to § 1.160(2). *Tivis*, 933 S.W.2d at 848 n. 3; *State v. Dean*, 898 S.W.2d 704, 707 (Mo. App.1995). Neither Crowe nor Prapotnik seem to notice that *Whiteaker* was not decided under § 1.160(2), but rather was specifically decided under a previous version of the exception described in subsection (1) of the statute. *Whiteaker*, 499 S.W.2d at 420–21. In 1993, the statute was amended to substitute the phrase "existing procedural laws" for "existing laws." We believe it is safe to say that if § 1.160(1) had then been worded as it is now, the court would not have decided

*Whiteaker* as it did, because § 546.615 (jail time credit) was not a procedural law, as we have already noted. Section 546.615 was an "existing law," but not an existing procedural law." Accordingly, we do not think *Whiteaker* is authoritative today.

This case is not the same as *State v. Whardo*, 859 S.W.2d 138 (Mo. banc 1993) (changes in drug laws occurring as part of the 1989 Drug Act); *State v. Sumlin*, 820 S.W.2d 487 (Mo. banc 1991) (exception under § 1.160 applied to provide benefits of provision of Drug Act that reduced punishment); and *State v. Pritchard*, 982 S.W.2d 273 (Mo. banc 1999) (allowed benefits of amendment after offense and before trial as to sodomy laws that created the offense with which he was charged.)

In this case, it was not the statute *creating the offense* which was changed after the offense. It was the statute governing jail time credit. Although that statute might have an effect of reducing the time which one would have to serve, that statute was not the statute "creating the offense." *See State v. Graham*, 13 S.W.3d 290, 292–93 (Mo. banc 2000) (difference between statute defining crimes and collateral statute which may affect sentence or time served). Therefore, the plain terms of the exception (requiring a change in the statute creating the offense) to the general rule of § 1.160 do not embrace the statutory change before us.

### Conclusion

For the foregoing reasons, we conclude that the trial court erred in granting the declaratory relief. The judgment of the trial court is reversed.

LOWENSTEIN and NEWTON, JJ., concur.